Good morning, ladies and gentlemen. Beautiful day. First case on our docket today is the case of Susan Medler v. Nora Fulk and Fairfield Memorial Hospital. We have Mr. Kent Heller for the appellant, and we have Ms. Karen Kendall for the appellees. And you may begin when you're ready to proceed. May it please the court, counsel. I suggest this is a fairly simple issue before the court, and the issue is may an expert witness testify that an eyewitness didn't see what he says he saw. And I think the answer has always been and needs to be no, he can't do that. An expert who is performing, giving an opinion based upon medical records has to give an opinion consistent with the record. He can't say, Dr. Reagan, board-certified urologist, looked in there, and he reports, I saw a laceration of the bladder. It was covered, it was crossed with sutures. It appeared to me that the bladder had been nicked during the hysterectomy and then repaired. And two experts come to the defense and say, no, no, no, that isn't what he saw. One of them says, it was just folded over and there were sutures through the fold. And the other one says, no, that isn't what he saw. He didn't see that. He made the hole himself. Counsel, why isn't that expressions of differing opinions by experts? Because it's what he saw. It's not an opinion. Dr. Reagan said, I looked in the bladder and I saw a laceration. And Dr. Schuster, the defendant's expert, said, if that's really what he saw, this is beyond negligence. This is deceptive. This is deception. This is beyond negligence. That's awful if that's what he saw. But that isn't what he saw. He didn't see that. In his opinion. He said, in my opinion, that's not what he saw. But how does he know what Dr. Reagan saw? He didn't look in the bladder. I mean, that's like saying, why couldn't an expert witness say, I know the driver said the light was red, but it wasn't really red. It was green. Well, wouldn't the jury understand that what the defense expert is expressing is an opinion? Well, sure. And didn't you argue, you know, this man's testifying to what he actually saw? He said it was just an opinion. But the evidence should have never come in. For the same reason that expert testimony about reconstruction shouldn't come in when there are eyewitnesses. This shouldn't. There shouldn't even be an opportunity to present, to say, the eyewitness didn't see what he said he saw. There's good reason for it. I mean, in the 7th century, in England, they had oath helpers. We studied them in civil procedure in law school. And the faster you said the oath, the more clearly you said the oath, the more true your testimony was. And that's what we're getting to here. We've got an eyewitness who says, I saw a laceration in the bladder. And you've got a witness who you can pay. Pay him enough. They'll say whatever you want. He comes in, and he says, nah, you didn't see it. I know you're a board-certified urologist, but you don't know what you saw. You didn't see a laceration in the bladder, and you didn't see four stitches across the laceration? Did the urologist? I'm sorry. We have not perused the record yet. So, you know, we're right here kind of trying to decipher what you said that was in the record at this point. Did he say that there was actually a laceration? He did. He described the laceration in his operative report. He described it in his testimony. And he opined that it appeared to him that the sutures were across the laceration and that it was an attempt to repair the laceration. He even testified at trial that he'd shown a light in the vagina, and he could see it in the bladder. And he'd shown it in the bladder, and he could see it in the vagina. And that the only way that was possible was for there to be a fistula, a hole, communicating those two organs. And, in fact, Dr. Schuster, the defendant's expert, testified at trial that the only way he could have been positive it was a laceration would have been to put the light in one and see it in the other, not aware that Dr. Reagan had actually testified that's what he did. Well, did the defense experts testify that the fistula itself could have made that possible that you could see a light through the, into the bladder? Dr. Schuster. And wasn't that subsequent? Their position was that was actually subsequent to, something that developed subsequent to the operation. Dr. Schuster's position was there was no fistula, there was no laceration, there was no communication between the two, that the urine was coming, was leaking around these tiny sutures that were in the, in the bladder. And Dr., the other defense expert, he testified that he thought that Dr. Reagan burped a hole by setting the cautery too high, that he was the one that actually created the fistula as opposed to it being there before he operated. Of course, there's nothing in the record that would support that with the exception of the, he says based solely on the setting of the cautery equipment, I think Dr. Reagan burped a hole, although Dr. Reagan's report doesn't indicate that he did any damage. He was not sued, was he, Dr. Reagan? He was not. Independent treating physician had no bore in this fight at all. He was simply a subsequent treating physician. You know, on the street, when you send somebody to an IME and he's got both legs cut off and you get the report back and it says nothing wrong with this guy. I mean, where do we draw the line? Where do we say you can't just ignore what the evidence is and come up with an opinion that's totally contrary? Where do you say you can't just dismiss what the eyewitness says? You've got to deal with it. And Dr. Schuster, the defendant's expert, said, you know, if in fact she did nick the bladder, and if in fact then she repaired it, she was covering it up because she doesn't mention it. Dr. Folt doesn't mention it in her report. He says that's despicable. He says I wouldn't be here. But that isn't what Dr. Reagan saw. I suggest that the rule on experts should be the same as everyone else. That is, if you have an eyewitness, you can't have testimony that contradicts the eyewitness. No matter what the eyewitness would say. Well, I suppose you could question the credibility of the eyewitness. Maybe the eyewitness was drunk or maybe the eyewitness was under some discolor blind that would go to his ability to observe. But if an eyewitness says I saw the truck stop at the stop sign, can an expert come in and say, oh, no, I've looked at it. The eyewitness doesn't know what he's talking about. It was really moving 25 or 30 miles an hour at the time of the alleged impact. We don't allow it in those circumstances. Why would we allow it to contradict the eyewitness testimony of a board-certified urologist who has no ax to grind one way or the other and who says I saw a laceration and I saw it. Can circumstantial evidence be used to counter direct eyewitness testimony? Sure, but what circumstantial evidence is there other than the doctor's opinion? There isn't any, except he says, well, there wasn't any charge for PDS sutures. But if you're going to cover something up, you aren't going to charge the plaintiff for PDS sutures. You simply put them in. I mean, the right thing to do, obviously, would be to say I nicked the bladder, I attempted to repair it, and we'd go on, but that isn't what happened here. Their subsequent treater finds this laceration with sutures across it, and then the defendant's experts come and say, no, that isn't what happened. That isn't really what happened at all. We think that the court should make it clear that no one, let alone an expert, can come in and say the witness didn't see what he says he saw. Thank you. Thank you. Ms. Kendall? If it pleases the support of counsel, my name is Karen Kendall, and I represent the defendants in this case. At trial, the jury heard the testimony of six physicians, Dr. Falk and Dr. Reagan. In addition, the jury heard the testimony of two expert witnesses on behalf of the plaintiff, Dr. Clear and Dr. DeBow. Also, the jury heard the testimony of Dr. Bryan and Dr. Schuster on behalf of the defendant. The jury heard conflicting testimony regarding whether, when you're closing after an abdominal hysterectomy, you inadvertently suture the bladder when you're suturing the vaginal cup. That amounts to negligence. The experts disagreed on that point. Dr. Ernest Bobby Clear was a general surgeon from Waverly, Tennessee. He performed two or three hysterectomies a year, and he testified on behalf of the plaintiff. He testified that there was no laceration to the plaintiff's bladder. The plaintiff's expert testified that there was no laceration to the plaintiff's bladder. Now, can you tell me on what basis? Because we don't have any. Well, on what basis did he testify? Right. He reviewed the medical records. So does the record say there's a laceration or not? No. It does not use the word laceration? No. No, actually, Dr. Falk's report was described by Dr. Bryan as meticulous, and he said that she used the same dissecting procedures that he used in performing an abdominal hysterectomy. When Dr. Falk closed, she thought this had been an uneventful surgery. It was only later that it was determined that some stitches were inadvertently placed. Now, what the plaintiff is trying to do is create an issue that literally does not exist. Plaintiffs, you know, this issue is set with respect to the plaintiff's motion limiting. The plaintiff tried to prevent anyone from testifying on behalf of the defendant. But we would still, even if you banished Dr. Bryan and Dr. Schuster, you still have plaintiff's expert, Dr. Clear, coming forth and saying there isn't any laceration based on my review of the medical records. Did the plaintiff's complaint allege negligence in lacerating the bladder, or was this case based entirely on an allegation of negligence for stitching through the bladder? You know, I don't recall what the complaint itself said. I mean, isn't that where the experts lined up, though? The plaintiff's experts said it was negligence to stitch through the bladder. Actually, Dr. Clear said any time you inadvertently place a stitch in the bladder, it's negligence. Dr. DeBow, plaintiff's second expert, agreed. He agreed with Dr. Clear that Dr. Falk did not intentionally place any stitches in the plaintiff's bladder. But he disagreed with Dr. Clear that it's always negligence. He said that you can inadvertently place stitches in the bladder, and it's not negligence if it's only one or two stitches. But he drew the line at three or four. So he said that if there are three or four stitches, it's negligence. Dr. Bryan, our expert, said Dr. Falk met the standard of care and that merely placing an inadvertent stitch in the bladder while you're suturing the vaginal cuff is not negligent. And that actually was and should have been the point of disagreement, which the jury heard that testimony and had to decide. Dr. Bryan agreed with plaintiff's expert, Dr. Clear, that there was no laceration in the bladder. Dr. Reagan's medical records do not use the term laceration. Dr. Reagan had many, many, many problems with his testimony. And one thing that the plaintiff wholly ignores here before this court is that Dr. Reagan agreed that the sutures might have been placed in the bladder during the suturing of the vaginal cuff. He agreed with that. So that would be in contrast to there being a conspiracy of the unintentional laceration that was covered up. Yes, lacerated the bladder, did multiple layers of stitching to repair the bladder, and just forgot to mention it in the medical records. That's the plaintiff's conspiracy theory that does not exist in this record. Dr. Reagan actually never had the benefit of reviewing Dr. Falk's records, although all the other physicians did. And although he found sutures in the bladder, he didn't remember how many. Remember what Dr. DeBose said? If it's one or two, it's not negligent. If it's three or four, it is negligent. He didn't remember how many, and his record did not reflect how many. You're saying that the second doctor that performed the... The urologist. Urologist. Yes. Dr. Reagan never saw the procedure, the records of the surgical procedure. Right, correct. Dr. Falk. Yes, Your Honor. And that's... He did not look at Dr. Falk's records. And that was brought out at trial. Yes. He had more problems than just the ones I've mentioned so far. As plaintiff told you, he reported that this PDS material was used in suturing. But later he said, well, I don't really know what it is. Dr. Falk reported the kind of suture material she used. It was O-vipral, not this PDS. He performed a cautery when he saw these stitches, which, according to Dr. Schuster, burned the bladder and created a fistula. Dr. Reagan told the family that he'd removed the stitches. But he didn't do that. He also told them alternatively that he had rewoven the stitches. He didn't do that either. And how do we know that? Because the family testified. How do we know that they weren't removed? How is that proven? Because they were still there. He admitted he didn't remove them. He admitted at trial that he didn't remove them, contrary to what he told the family. He also told the family that he could get the serial numbers from the stitches, and then admitted at trial that, of course, you can't get serial numbers from stitches. This is a case that the jury heard and decided fairly.  Plaintiff is trying to say that this is, in essence, an accident reconstruction case, and relying on cases like Watkins v. Schmidt, where you have a car crash and you have an eyewitness to the accident, can you have reconstruction testimony? This court wrote an opinion in 1989 which explained that that wasn't the law then, and it's not the law now that you apply accident reconstruction standards to medical negligence testimony. What this court said back at that time was we have kind of a dichotomy here. In medical negligence cases, we do have people who observe and testify, usually several of them, but we also have testimony of expert witnesses, which is required under Illinois law to prove standard of care, breach of standard of care, and proximate cause. Plaintiff is really asking this court to create a kind of law that doesn't exist in medical negligence cases in Illinois. This case was fairly tried. If you look at the testimony of the witnesses, you will see that no one thought that the plaintiff's bladder had been lacerated. No one thought that stitches had been intentionally placed in the bladder. Not plaintiff's expert, Dr. Clear, not plaintiff's expert, Dr. DeBow, not Dr. Bryan, not Dr. Schuster, not Dr. Falk. Dr. Reagan's treatment and testimony of the plaintiff was replete with contradictions, implausibilities, improbabilities. The jury heard it and fairly decided this case. And we ask this court not to change the law, as the plaintiff is seeking, but simply to affirm the verdict of the jury on the basis of the testimony, which is contained in the record on appeal. Thank you, Ms. Spangler. Mr. Heller, do you have the opportunity for a follow-up? I think when you look at the record, you'll find that some of the counsel's suggestions to you are not entirely accurate. The issue of laceration, whether the doctors could testify to that, was the basis of a motion in limine brought before trial. This was an issue. Even the defendant's expert said that if that laceration was there, this was negligence, was worse than negligence, and that they wouldn't be there testifying. Dr. Clear and Dr. DeBow didn't need to reach that issue because their opinion was that even if it wasn't lacerated, there was negligence because of the placement of the sutures. That's not to say that they didn't believe the suture or the laceration wasn't there. They didn't disbelieve Dr. Reagan, and Dr. Reagan explicitly testified, and if you look at the brief, I think we cite directly to the page, to the record 688 and 689, where he describes the laceration that he saw on the back of the wall. The complaint does allege that that is part of the negligence, and that was one of the issues for the jury. I think we all agree that if she, in fact, lacerated the bladder and, in fact, sutured it and didn't put it in a report and tried to cover it up, that that was at least negligence. It was despicable, according to Dr. Schuster, and for them to take the position that it just didn't happen because Dr. Reagan shouldn't be believed or can't be believed is not the current state of the law. He saw it, he reported it, and their opinion must be based on the record, which included the fact that there was, in fact, a laceration of the bladder. For that reason, we think that the verdict should be reversed, that the case should be remanded with directions that the witnesses cannot testify, that the eyewitness didn't see what he says he saw. Thank you. Thank you, Mr. Heller. Ms. Kendall, thank you for your briefs and arguments. We will render a decision in due course.